ESTATE OF ZAC EMERSON, DECEASED, W. P. WALDROP AND DOWLING EMERSON, JOINT INDEPENDENT EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5803–75. Filed January 6, 1977.

*Joe A. Keith,* for the petitioners.
*Frank C. Hider, Jr.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioner's Federal estate tax in the amount of $71,590.04. Concessions having been made, the following issues remain for our decision: (1) Whether respondent is estopped from filing an amended answer to plead an alternative legal position under section 2033;[1] and (2) if respondent is estopped, whether the value of certain property should be included in Zac Emerson's gross estate under section 2036; or (3) if respondent is allowed to amend his answer, whether the value of such property is includable under either section 2033 or section 2036.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

### FINDINGS OF FACT

All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows.

Zac Emerson (hereinafter Zac or decedent) died on September 13, 1970, a resident of Van Alstyne, Tex. The joint independent executors of his estate, W. P. Waldrop and Dowling Emerson, resided in Texas at the time the petition herein was filed. Petitioner's Federal estate tax return was filed with the Internal Revenue Service Center, Austin, Tex.

Zac and his wife, Lois Waldrop Emerson (hereinafter Lois), executed a joint will on March 2, 1962, which provided in part as follows:

#### III

It is our will and desire that the one of us who shall outlive the other shall have and hold in fee simple all personal property of every kind and character of which the deceased shall die seized and possessed. Should we die as the result of a common accident or catastrophe, regardless of which of us shall die first, such personal property shall become a part of our residuary estates hereinafter bequeathed.

#### IV

It is our will and desire that the one of us who shall outlive the other shall have all interest of the deceased in the homestead which may be occupied by us at the time of the death of the first of us during his or her natural life, with the power to sell and convey the fee simple title to the same. Should he or she exercise the power to sell said property, such survivor shall have the right to reinvest the proceeds, or so much thereof as may be necessary, in another homestead, the fee simple title to property so acquired to be vested in such survivor for life, with the power to sell and convey the fee simple title thereto. On the death of such survivor such property shall become a part of our residuary estates hereinafter bequeathed.

#### V

We each give, devise and bequeath to the other out of all the separate real property, if any, which we, or either of us, may own or possess at the time of our respective deaths, separate property of a value equal to one-half (½) of the value of the separate property included in our respective estates for Federal estate tax purposes. Such devise to the survivor of us shall be free and clear of all Federal estate taxes and shall be subject only to its proportionate part of the expenses and debts claimed against the estate of the first of us to pass away. In valuing the property out of which this bequest may be satisfied the amount of any encumbrance or obligation against any particular asset or assets shall be taken into account.

## VI

All the rest, residue and remainder of our property, including the property bequeathed by the foregoing paragraphs hereof upon the death of the survivor of us, we give, devise and bequeath to the survivor of us for and during his or her natural lifetime. Upon the death of the survivor of us, or in the event we should die as the result of the same accident or catastrophe, at the same time or under circumstances where it cannot be determined which of us died first, such property shall pass and descend as follows * * *

Lois died on August 25, 1964. In a so-called "30-day letter" dated June 10, 1966, respondent asserted an estate tax overassessment in the amount of $3,037.74 against the estate of Lois because her estate tax return had erroneously included in her gross estate the value of certain property which was the separate property of Zac. In another "30-day letter" also dated June 10, 1966, respondent asserted a gift tax deficiency against Zac in the amount of $13,966.96. Under respondent's interpretation of the joint and mutual will, Zac, as survivor, made a gift to the residuary beneficiaries under the will of the remainder interest in all of his separate property and also his share of the community property at the date of death of Lois, the first to die.

In separate letters, dated June 23, 1966, Zac, as executor of Lois' estate, protested the estate tax overassessment and, in his individual capacity, protested the gift tax deficiency for 1964.

A conference was held on August 5, 1966, in Dallas, Tex., with an appellate conferee. In a letter from such conferee, dated September 15, 1966, respondent proposed a settlement under which he agreed to concede the allowability of a marital deduction which would increase the estate tax overassessment of Lois' estate from $3,037.74 to $3,717.73, and the joint and mutual will was construed as effecting a gift, upon the death of Lois, of the remainder interest in both Zac's share of community real property, including homestead property, and also half of his separate real property. Accordingly, respondent agreed to concede that half of Zac's separate property and all of his personal property was not affected at Lois' death by the provisions of the joint will, and such concession, together with application of the $30,000 lifetime exemption, decreased Zac's gift tax deficiency from $13,966.96 to $2,119.37.

Zac's representatives, an attorney at law and a certified public accountant, recommended that he accept respondent's settlement proposal. Consequently, Zac executed two Forms 870–AD, Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment. Therefore, Zac and respondent agreed that there was a deficiency in Zac's 1964 gift tax in the amount of $2,119.37.

After Zac's death on September 13, 1970, respondent determined a deficiency in his Federal estate tax on the theory that, upon Lois' death, Zac had made a gift to the residuary beneficiaries of the will of a remainder interest with a retained life estate of both his share of the community real property, including homestead property, and also half of his separate real property under the provisions of the joint and mutual will. Accordingly, respondent included the value of such property in Zac's gross estate under section 2036.[2]

Upon receipt of respondent's statutory notice, petitioner timely filed a petition in this Court, commencing the present action, and the case was set for trial on March 15, 1976. However, when the case was called on calendar, respondent filed a motion for leave to file an amended answer pleading the alternative legal position that the value of the property in question was includable in Zac's gross estate under section 2033.[3] Petitioner filed objections to such amended answer and we decided to rule on the motion, and the objections thereto, with the rest of the case.

The parties agree and stipulate that, if we sustain respondent's position under either section 2036 or section

---

[2] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

    (1) the possession or enjoyment of, or the right to the income from, the property, or

    (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[3] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

2033, the taxable estate as revised in the statutory notice, and further revised by stipulated concessions, will be the correct basis upon which to compute petitioner's estate tax liability.

Respondent concedes that, if we sustain his position under either section 2036 or section 2033, petitioner is entitled to a Federal gift tax credit of $2,119.37 for gift tax paid as a result of the 1966 settlement.

OPINION

We first turn to the question of whether respondent is estopped from filing an amended answer in order to plead that the value of Zac's share of the community property and half of his separate property, to the extent that such property or proceeds therefrom were owned by Zac at his death, is includable in his gross estate under section 2033. Petitioner argues that respondent should be estopped from denying that Zac made a gift of a remainder interest in both his share of the community property and also one-half of his separate property at the time of Lois' death because respondent erroneously determined a prior gift tax liability against Zac on the theory that he had made such gifts. Respondent argues, however, that the doctrines of estoppel and quasi-estoppel should not apply in this case because the gift and estate taxes are different taxes involving separate taxable entities and separate transactions. Respondent further argues that the gift tax determination was based on a mistake of law which he should be allowed to correct at this time since he incorrectly determined, under Texas law, the legal effect of a joint and mutual will upon the death of the first to die.

Although the doctrines of estoppel and quasi-estoppel are applicable against the Commissioner, it is well established that these doctrines should be applied against him with utmost caution and restraint. *Schuster v. Commissioner*, 312 F.2d 311 (9th Cir. 1962); *Guenzel's Estate v. Commissioner*, 258 F.2d 248 (8th Cir. 1958); *Vestal v. Commissioner*, 152 F.2d 132 (D.C. Cir. 1945); *Frank Hudock*, 65 T.C. 351 (1975). "[T]he policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." *Schuster v. Commissioner, supra* at 317.

The essential elements of estoppel are not present in the instant case. These elements are: (1) There must be a false

representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. *Morris G. Underwood,* 63 T.C. 468 (1975), affd. 535 F.2d 309 (5th Cir. 1976). Petitioner has failed to show that respondent made a misrepresentation of *fact.* Petitioner has only shown that respondent innocently misrepresented the effect, under Texas law, of the joint and mutual will executed by Zac and Lois. This representation is clearly a statement of law, not fact. Petitioner has introduced no evidence that respondent, as part of the settlement agreement, represented to Zac that the value of the property taxed as a gift would not subsequently be included in his gross estate.

While there are exceptions to the general proposition that the estoppel doctrine is inapplicable to prevent respondent from correcting a mistake of law, these exceptions apply only in those rare instances where the equitable interest of the party asserting estoppel is "compelling" and the loss which it would sustain is "unwarrantable" and "unconscionable." *Schuster v. Commissioner, supra* at 317, 318. We do not believe the instant case to be one of those rare instances where the Commissioner should not be allowed to correct a mistake of law.

In this case, no double taxation will result if respondent corrects his mistake of law. *Morris G. Underwood, supra; Estate of Carl J. Guenzel,* 28 T.C. 59 (1957), affd. 258 F.2d 248 (8th Cir. 1958). Including the value of property in the gross estate of a decedent who has previously paid a gift tax on the inter vivos transfer of such property is specifically provided for by sections 2501 and 2036 when read together. In cases of double taxation, the Commissioner profits from a prior erroneous determination because it permits him to assess a second tax that would have been improper if the prior determination had been correct. *Joseph Eichelberger & Co. v. Commissioner,* 88 F.2d 874 (5th Cir. 1937). In this case, however, if respondent's gift tax determination had been *correct,* then the value of the property in question would have been includable in Zac's gross estate under section 2036, or if

the erroneous gift tax determination had never been made, such value would be includable under section 2033. However, since subsequent decisions of this Court have proved that respondent's gift tax determination was erroneous, petitioner now seeks to profit from respondent's mistake by avoiding an estate tax which would otherwise have been properly assessed.

Zac had no reasonable expectation that an estate tax would not be assessed on the value of the property that he had allegedly given away or that the same principles would be applied in taxing Zac's estate as were applied in the gift tax determination. *Guenzel's Estate v. Commissioner, supra.* Although Zac, as a result of the erroneous determination, did pay a gift tax in the amount of $2,119.37,[4] the acceptance of such payment by the respondent was not a representation that respondent would exclude the value of the property in question from Zac's gross estate. Moreover, since it was not in Zac's interest to litigate, such payment was necessary in order to settle the 1964 gift tax controversy and it does not establish reasonable reliance to petitioner's detriment on any representation by respondent that petitioner's estate taxes would be reduced below the proper amount or that respondent's "gift theory" would be applied to the computation of petitioner's Federal estate tax liability. *Knapp-Monarch Co. v. Commissioner,* 139 F.2d 863 (8th Cir. 1944); *Frank Hudock, supra.* Consequently, we do not believe that petitioner·will suffer an "unwarrantable" and "unconscionable" loss[5] if respondent is allowed to amend his answer to argue that the value of the property in question is includable in decedent's gross estate under section 2033.

The cases upon which petitioner relies are distinguishable. In some of those cases, the doctrines of estoppel or quasi-estoppel were applied to prevent double taxation, *Vestal v. Commissioner, supra; Joseph Eichelberger & Co. v. Commissioner, supra; Perkins v. Thomas,* 86 F.2d 954 (5th Cir. 1936), affd. 301 U.S. 655 (1937), and, in the other cases, the taxpayer

---

[4] Respondent has agreed that petitioner is entitled to a Federal gift tax credit of $2,119.37 if we sustain respondent's position under either sec. 2033 or sec. 2036.

[5] Although petitioner argues otherwise, respondent's determination that a gift had been made was solely for Federal gift tax purposes and it did not affect decedent's title to any of his property under State law.

reasonably relied on the Commissioner's statements that the tax in question would not be assessed. *Schuster v. Commissioner, supra; Simmons v. United States,* 308 F.2d.938 (5th Cir. 1962); *Time Oil Co. v. Commissioner,* 258 F.2d 237 (9th Cir. 1958); *H.S.D. Co. v. Kavanagh,* 191 F.2d 831 (6th Cir. 1951).

Accordingly, we grant respondent leave to amend his answer to plead the alternative legal theory that the value of the property in question should be included in decedent's gross estate under section 2033.

Petitioner argues that, under Rule 142(a), Tax Court Rules of Practice and Procedure, the burden of proof shifts to the respondent on his asserted section 2033 theory because this theory is "new matter" pleaded by the respondent in his amended answer. It is well settled that respondent is treated as having introduced a "new matter" where his answer alters the amount of the original deficiency, requires the presentation of different evidence, or is inconsistent with his original determination. *Sanderling, Inc.,* 66 T.C. 743 (1976), and cases cited therein. In the instant case, respondent's alternative legal position under section 2033 does not alter the amount of the original deficiency nor does it require the presentation of new evidence since the validity of respondent's theories under both sections 2033 and 2036 depends upon the legal effect, under Texas law, of the joint and mutual will upon the death of Zac's wife, Lois. Moreover, the theories are not inconsistent, for inherent in both is the notion that decedent possessed and enjoyed the property in question, or the right to income therefrom, during his lifetime. *Estate of Grace M. Scharf,* 38 T.C. 15 (1962), affd. 316 F.2d 625 (7th Cir. 1963). Such possession and enjoyment may be reserved by a transfer with a retained life estate (sec. 2036) or by retaining all interest in the property (sec. 2033). Therefore, we hold respondent's determination to be presumptively correct and that the burden of proof is on the petitioner to prove that the value of the property in question is not includable in Zac's gross estate under either section 2033 or section 2036. Rule 142(a), Tax Court Rules of Practice and Procedure.

Petitioner has not met his burden and we hold that the value of Zac's share of the community property and one-half of his separate property, or the proceeds therefrom, that he owned at the time of his death should be included in his gross

estate under section 2033. Under the provisions of the joint and mutual will, Zac did not transfer any interest in such property upon the death of Lois. *McFarland v. Campbell,* 213 F.2d 855 (5th Cir. 1954); *Scofield v. Bethea,* 170 F.2d 934 (5th Cir. 1948); *Sallie B. Hambleton,* 60 T.C. 558 (1973); *Magids v. American Title Insurance Co., Miami, Fla.,* 473 S.W.2d 460 (Tex. 1971). Therefore, Zac retained his interest in such property when Lois died and the value of such property should be included in decedent's gross estate under section 2033. *Scofield v. Bethea, supra.*

*Decision will be entered under Rule 155.*