LESTER B. KENOFF and JOANNE E. KENOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kenoff v. Commissioner
Docket Nos. 16587-81, 7127-84.
United States Tax Court
T.C. Memo 1986-158; 1986 Tax Ct. Memo LEXIS 447; 51 T.C.M. (CCH) 885; T.C.M. (RIA) 86158; April 21, 1986. Lester B. Kenoff, pro se. Fera Wagner, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $6,805, $4,242, and $7,153.42 in petitioner's Federal income taxes for 1977, 1978, and 1979, respectively. Respondent also determined an addition to tax under section *448 6651(a)(1) [1] of $313.05 for 1979. The issue to be determined is the entitlement of petitioner Lester B. Kenoff (petitioner) to deductions for losses resulting from embezzlement by his investment advisor. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated herein by this reference. Petitioners were residents of Manhattan Beach, California, at the time they filed their petitions in these cases. They timely filed joint Federal income tax returns for 1977 and 1978. Their joint income tax return for 1979 was filed on June 18, 1980. No extension of time to file the 1979 return had been obtained, and it was, therefore, not timely. In the late 1960s, petitioner met Aaron Kleinman (Kleinman), who was introduced to petitioner as a "financial genius." During 1977, petitioner invested funds with Kleinman through Kleinman's corporation, Manus, Inc. On August 15, 1977, petitioner invested $12,000 with Manus, Inc. From time to time, Manus, Inc., provided purported statements of account to *449 petitioner. On a statement dated April 29, 1977, petitioner's "beginning balance" was shown as $56.97. Kleinman represented to petitioner that petitioner's funds were invested in two entities known as Thomas Crown Properties, Inc., and Thomas Crown Equipment Investors (the Thomas Crown entities). Manus, Inc., sent statements to petitioner reflecting income amounts allegedly earned by petitioner, but the amounts shown were fictitious. Manus, Inc., also sent payments to petitioner, including a check for $1,000 received by petitioner on January 20, 1978, and a check for $1,500 received by petitioner on May 8, 1978. In December 1977, the Internal Revenue Service contacted an individual (S), whose 1975 and 1976 income tax returns had been prepared by Kleinman. During the course of the contacts with S, it was disclosed that purported copies of returns given to S by Kleinman were not the same as the returns filed by Kleinman for S with the Internal Revenue Service. On the returns actually filed with the Internal Revenue Service for S, refunds were claimed. On the copies delivered to S by Kleinman, tax liability of more than $10,000 was shown. The Internal Revenue Service did not *450 notify petitioner that any investigation of Kleinman's activities was underway. Subsequently, Kleinman was convicted of mail fraud and Federal securities law violations. In 1979, a receiver took possession of the assets of Manus, Inc. William Russ (Russ) was appointed to review the claims of creditors of Manus, Inc. Russ calculated each investor's claim as the actual amount originally invested less any cash received by the investor. He then sent each investor a confirmation of claim, with instructions to be completed if the investor did not agree with Russ' computations. Petitioner first received notice of the Manus, Inc., receivership in September 1979. He received a confirmation of claim in the amount of $10,532.50, which he signed and returned to the receiver. At no time did petitioner file a proof of claim disputing the receiver's calculations. At all times, the receiver anticipated that the investors could recover 40 to 50 percent of their investments. The period for filing claims against the receivership ended in March 1980. As of that time, the receiver had accumulated enough funds to repay 45 cents on each dollar of allowable claim. In December 1981, payment was *451 made to the investors at a rate of 45 percent of their claims. Petitioner received $4,739.62 in December 1981, $526.63 in June 1982, and $221.32 in July 1985. During 1977 and a part of 1978, petitioner was a member of the law corporation of Bisignani, Kenoff and Conway. The law corporation maintained a noncontributory pension plan for its employees. Pension plan funds were invested with Manus, Inc. The law corporation filed a claim with the receiver with respect to the pension plan funds. On their joint income tax returns for 1977 and 1978, petitioners claimed partnership losses relating to the Thomas Crown entities. On their joint income tax return for 1979, petitioners claimed embezzlement losses of $18,500 on Schedule A (Itemized Deductions) and $8,000 on Schedule C (Profit or (Loss) From Business or Profession), relating to Kleinman and Manus, Inc. The $8,000 claim was described as "embezzlement of vested interest in pension & profit sharing fund." On April 3, 1981, respondent sent to petitioners a statutory notice of deficiency with respect to the years 1977 and 1978. Losses claimed by petitioners with respect to the Thomas Crown entities were disallowed. On December 20, 1983, respondent *452 sent to petitioners a statutory notice with respect to 1979. Embezzlement losses claimed in the total amount of $26,500 were disallowed. Other adjustments in the statutory notice are no longer in dispute. In a petition filed July 6, 1981, petitioners contested the deficiencies determined by respondent for 1977 and 1978. In that petition, they abandoned their original theory of deductibility of losses relating to the Thomas Crown entities. They alleged that Kleinman had embezzled their funds and that: 5. The facts that the Petitioners rely upon as the basis of their case are as follows for the calendar years of 1977 and 1978: * * * (j) That the partnerships of Thomas Crown Properties #1 and Thomas Crown Equipment Investors were set up by Manus, Inc. and Aaron Kleinman to raise funds for Aaron Kleinman's personal use. (k) That Aaron Kleinman embezzled the Petitioners' funds. (Convicted and sentenced by District Court). (1) That the prospects of any recovery are extremely remote as there are no assets available in these two entities from which to recover any monies. (m) That the embezzlement loss should be deducted net of deductions taken and $100.00 deductible as a *453 Sec. 165 loss. (n) That the substance of these two entities was in fact nothing more than a theft of the Petitioners' funds by fraudulent representations. In a petition filed March 19, 1984, petitioners made similar allegations in contesting the deficiency determined for 1979. At no time did petitioners have reason to believed that they would not recover at least part of the funds embezzled by Kleinman. In April 1982, petitioner wrote a letter to respondent's counsel stating, in part: On March 18, 1982, we had a telephone conversation concerning the fact that a Notice of Levy on wife's salary had been sent to the Los Angeles Unified School District and the Superintendent of Schools, her employer. By letter dated March 22, 1982, I sent you copies of the Notice of Levy and the inter-office correspondence to the Superintendent of Schools and the Los Angeles Unified School District. You had indicated to me that a release of the levy would be issued as soon as possible. On April 16, 1982, we received a copy of the Release of Levy, dated April 7, 1982. Attached to that letter was an Internal Revenue Service routing slip, referring to petitioners' income taxes as determined *454 by respondent for the years 1977 and 1978, and stating: "The tax on the above case has been abated for the years indicated by the Fresno Service Center." On October 24, 1983, the Internal Revenue Service sent to petitioners a notice for the year ended December 31, 1977, setting forth the following: STATEMENT OF ADJUSTMENT TO YOUR ACCOUNT
BALANCE DUE ON ACCOUNT BEFORE ADJUSTMENT
$8,814.90
ADJUSTMENT COMPUTATION
TAX- DECREASE
6,805.00
REDUCTION OF INTEREST PREVIOUSLY CHARGED
2,009.90
NET ADJUSTMENT CREDIT
8,814.90
BALANCE DUE
NONE
ULTIMATE FINDING OF FACT During the years in issue, petitioners had a claim for reimbursement of amounts embezzled by Kleinman, as to which there was a reasonable prospect of recovery. OPINION Petitioners have the burden of proving that the amounts determined in the statutory notices of deficiency are incorrect. Rockwell v. Commissioner,512 F.2d 882 (9th Cir. 1975); Rule 142(a), Tax Court Rules of Practice and Procedure. Because petitioners have conceded that the purported investments with the *455 Thomas Crown entities were merely false representations by Kleinman and not actual business losses, the present dispute depends on the deductability of amounts invested as theft losses. Section 165 allows a deduction for loss from theft discovered during the taxable year to the extent that such loss exceeds $100 and is not reimbursed by insurance or otherwise. To be allowable as a deduction under that section, the loss must be evidenced by a closed and completed transaction, fixed by identifiable events, and actually sustained during the taxable year. Section 1.165-1(b), Income Tax Regs.Section 1.165-1(d)(2), Income Tax Regs., provides: (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section *456 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances.Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. * * * Even without a right to reimbursement, theft or embezzlement losses cannot be claimed prior to the year in which they are discovered. See, e.g., Asphalt Industries, Inc. v. Commissioner,411 F.2d 13 (3d Cir. 1969), affg. a Memorandum Opinion of this Court; Scofield's Estate v. Commissioner,266 F.2d 154 (6th Cir. 1959), affg. 25 T.C. 774 (1956); Colburn v. Commissioner,T.C. Memo. 1977-29, affd. without published opinion 647 F.2d 170 (9th Cir. 1981). From the evidence it appears that petitioner *457 did not discover Kleinman's embezzlements prior to 1979 and that there was a reasonable and an actual prospect of recovery through the years in issue. Recovery in fact occurred at least through July 1985. Petitioner has failed to prove even that he believed that no reimbursement would be received. During the years in issue, therefore, the losses cannot be regarded as "closed and completed transactions" and are, therefore, not deductible. Because the losses are not deductible in the years before us, we need not resolve respondent's contentions that petitioner has not proven that he incurred losses beyond the net amount of his receivership claim and that, in any event, he cannot deduct the loss of the law corporation's pension fund. [2]
*458 Petitioner argues that respondent is estopped to assert the deficiencies because the Internal Revenue Service did not timely disclose publicly Kleinman's fraudulent activities and because respondent sent a notice to petitioner showing that no balance was owing for 1977. Neither of these arguments has merit. Even if petitioner had a claim against the United States based on a failure to warn him of Kleinman's fraud (which we doubt), it has no relevance to this case. There is no apparent relationship between Kleinman's fraud on S and his fraud on petitioner. Any claim would have to be asserted in a different action and not as an offset to his tax liability for the years in issue. This Court would not have any jurisdiction over that claim. [3]
Although we do sometimes determine questions of whether estoppel can be *459 applied against the Commissioner, in this case petitioner has not shown the necessary elements. Petitioner has not shown that the Internal Revenue Service made any misrepresentations to him or had any duty to disclose facts that were not disclosed to petitioner or that petitioners relied in any way on the Internal Revenue Service with respect to their investments with Kleinman. See generally, Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962); Boulez v. Commissioner,76 T.C. 209 (1981); Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977); Hudock v. Commissioner,65 T.C. 351, 363 (1975). Respondent contends that the notice sent to petitioner showing that no tax was due for 1977 was merely correction of an erroneous assessment as a result of petitioner's complaints about that assessment. The only logical inference from the record is that respondent is correct, and the adjustment to petitioner's account merely acknowledged that assessment was premature until final decision of the Court in this case. Section 6213(a). Certainly petitioners have not satisfied their burden of showing that *460 the notice was a concession by respondent on the merits of this case or anything other than an administrative correction of error. See Schuster v. Commissioner,supra.
Petitioners have not presented any evidence that they had reasonable cause for late filing of their 1979 return. The addition to tax under section 6651(a), therefore, must be sustained. We have considered the other arguments of the parties, and, in view of our disposition of the issues, need not address them. Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. We advise petitioner, however, that if he makes such a claim in a subsequent year and then brings it to this Court, he should produce better evidence than that presented in this case. In addition to being inconsistent with the claim filed in the receivership proceeding, his claims of deduction were not supported by any documentary evidence. The testimony of petitioner and of his former law partner was too vague to support the claims made with respect to the pension fund, and petitioner made no attempt to secure the records that would show his interest, if any, in that fund.↩
3. Petitioner also argues that the Internal Revenue Service had an obligation to promptly investigate and prosecute Kleinman under the Internal Revenue laws.Review of prosecutorial discretion is certainly not for this Court. See generally United States v. Lovasco,431 U.S. 783, 790-795 (1977), rehearing denied 434 U.S. 881↩ (1977).